# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ERICO INTERNATIONAL CORPORATION, | : | Case No. 1:05-cv-2924 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| | : | |
| DOC'S MARKETING, INC., *et al.*, | : | <u>ORDER</u> |
| | : | |
| Defendants. | : | |

This matter arises on Defendant Doc's Marketing, Inc.'s ("Doc's") motion for reconsideration (Doc. 29), through which Doc's requests that the Court reconsider its prior entry of a preliminary injunction (Doc. 27) against Doc's. Plaintiff opposed the motion (Doc. 31) and Doc's replied (Doc. 34). At an on-the-record conference held on June 8, 2006 – originally scheduled as a Case Management Conference – the parties agreed to stay this case pending mediation and, if mediation was not successful, pending the appeal Doc's indicated it would file following the Court's issuance of this Order.[1]  The Court received a letter from defendant's counsel in early December 2006 indicating that the parties' mediation efforts have not proved successful and asking that this ruling now issue.

In that regard, the parties were informed at the June 8th conference that the Court found that Doc's' motion for reconsideration was not well-taken. While the Court provided an oral explanation for its decision, it indicated that, given the nature of the issues presented, it would articulate its reasons further in a written order. This Order fulfills that promise. It is to be read, however, in

---

[1]  The stay order (Doc. 42) issued on June 13, 2006 indicates that the conference took place on that day. In actuality, the conference took place on June 8, 2006; the order simply issued five days later.

conjunction with the Court's oral comments, both at the June 8, 2006 conference and at the March 9, 2006 Preliminary Injunction Hearing, and its written Preliminary Injunction Order, dated May 3, 2006.  **Doc's' motion for reconsideration (Doc. 29) is <u>DENIED.</u>**

I.    <u>DISCUSSION</u>

In support of its request for reconsideration, Doc's makes two arguments.  First, Doc's argues that the Court applied the wrong legal standard in determining whether a preliminary injunction should issue in this case.  Citing  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001), Doc's argues that the Federal Circuit has adopted a unique legal standard regarding the propriety of injunctive relief whereby a party can resist a preliminary injunction *in a patent case* merely by asserting that the subject patent is "vulnerable" to an invalidity finding at trial.  Seizing upon language in *Amazon,* where the Federal Circuit noted that "vulnerability is the issue" when an invalidity challenge is asserted in response to a request for a preliminary injunction against continuing acts of infringement, Doc's argues that the legal standard applicable in <u>this</u> preliminary injunction case is different from and more lenient than that normally applied in non-patent cases. *Id*. at 1359.  Because this Court applied the standard four-part preliminary injunction test <u>without reference to the "vulnerability" language</u> used in *Amazon*, Doc's argues that the preliminary injunction the Court issued is facially improper.

Second, Doc's argues that reconsideration is justified under <u>any</u> legal standard because the Patent and Trademark Office ("PTO") has agreed to reexamine the Plaintiff's patent.[2]  Doc's argues

_____

[2] Doc's learned of the PTO's grant of its reexamination request <u>after</u> the Court had conducted the hearing on the Plaintiff's preliminary injunction motion.  The pending reexamination actually will be the <u>second</u> reexamination to be conducted in connection with the '994 patent.  Of course, the latest reexamination is based on a request by Doc's, not a *sua sponte* decision by the PTO to reconsider its own determinations.

2

that the fact that reexamination has been granted is "new evidence" that affects the Court's prior analysis.  In support, Doc's cites *Mathews v. Alltop*, No. 93 CV 2699, 1994 U.S. Dist. LEXIS 5521 (N.D. Ohio Mar. 28, 1994), which outlines the three major reasons justifying a court's reconsideration of its orders, one of which is the discovery of new evidence.  Based on this "new evidence," Doc's contends that there can be no doubt that the Plaintiff's patent is likely to fall in the face of an invalidity challenge; indeed, Doc's believes that the PTO has essentially flagged its intention to cancel the patent, or at least Claim 17, which is the claim at issue in this case.

Given Doc's' first argument, the Court is compelled either:

(1)    to agree that the Federal Circuit's "vulnerability" consideration constitutes a unique preliminary injunction standard for patent cases and, thereafter, to determine whether its application upsets the Court's issuance of a preliminary injunction in this case; or

(2)    to harmonize *Amazon's* references to "vulnerability" with the well-settled four-part test courts traditionally use to determine whether a preliminary injunction should issue in any case – *i.e.*, to conclude that the Federal Circuit has not articulated a *different* standard for preliminary injunctions in patent cases, but sought only to clarify certain considerations that should inform a court's application of the traditional standard.

Given (1) the Supreme Court's recent decision in *Ebay, Inc. v. MercExchange, LLC*, 126 S. Ct. 1837 (2006) – where the Court clarified that patent cases are not exempt from the application of traditional principles of equity *vis-a-vis* permanent injunctions and that the Federal Circuit is not free to alter the rules of civil procedure simply because a case involves a patent, and (2) the fact that the Federal Circuit's decisions on this topic do not *clearly* indicate an intention to create a different test

3

for patent cases, the Court deems the latter of these options to be the most appropriate.[3]

So as to provide the proper context for the Court's discussion, and to be clear with regard to the considerations upon which the Court premised its decision, the Court briefly reviews below the bases upon which it determined that a preliminary injunction is appropriate in this case.[4]  This is particularly relevant because Doc's essentially argues that the Court gave no consideration to whether the Plaintiff's patent is "vulnerable" (to use *Amazon's* term) to an invalidity finding.  As is evident from its prior analysis, however, the Court certainly considered that issue, and, though without use of the term "vulnerability" (or a derivation thereof), determined that it is substantially likely that the Plaintiff's patent would survive the invalidity challenge Doc's has asserted against it.  In other words, the Court concluded that it is unlikely that the patent is *truly vulnerable* to an invalidity challenge.

As such, the bone of contention Doc's has with the Court's prior order cannot be that the Court did not consider the invalidity defense it has asserted.  Rather, it only can be that the Court applied too high a burden of proof to that defense in this context, as was the Federal Circuit's criticism of the district court in *Amazon*.  As is clear from its motion, Doc's believes that it has established that the Plaintiff's patent is sufficiently "vulnerable" to avoid entry of a preliminary

---

[3] While the Court recognizes that *Ebay* involved a permanent injunction, as further outlined below, it appears – and logic certainly supports the conclusion – that the Court's intention in that case was to remind courts that patent cases are not entitled to special consideration when determining whether an injunction is appropriate.  Just as they would in any other case, the Supreme Court held that all courts are to apply well-settled principles of equity in a patent case to determine whether an injunction is appropriate.

[4] The Court's summary herein of its Preliminary Injunction Order, however, is just that – a summary.  The Court's May 3, 2006 Preliminary Injunction Order (Doc. 27) and the Court's oral comments at the June 8, 2006 conference should be considered in conjunction with this Order.

4

injunction by simply asserting a good faith invalidity defense and convincing the PTO to grant a reexamination of the patent.  Relying on *Amazon*, Doc's believes that such minimal showings are enough to resist a preliminary injunction.  The Court disagrees, both with Doc's' characterization of the present state of the law as well as its application of the facts of this case to the law.

### A.     The Preliminary Injunction

Of the four factors outlined in the Court's Preliminary Injunction Order (Doc. 27), the present debate involves only the first factor – the "likelihood of success on the merits" factor.  Accordingly, the Court limits its review of its prior analysis to that factor alone.

As outlined in the Court's prior order, Doc's argued that the Plaintiff's patent (the '994 Patent) is invalid.  In support of that contention, Doc's presented three challenges to the validity and/or enforceability of the patent; as to each, the Court found the Plaintiff was substantially likely to prevail.  Thereafter, the Court determined that it is substantially (indeed, highly) likely that the Plaintiff will prevail in proving that Doc's has infringed the '994 Patent.

### 1.     *Defendant's Validity Challenges*

*First*, Doc's argued that the '994 Patent is invalid (or otherwise unenforceable) due to inequitable conduct stemming from Plaintiff's failure to disclose material information to the PTO during the patent's prosecution – namely, disclosure of the 1990 EIA/TIA standard that sets forth a spacing standard for open-top cable supports.[5]  The Court found this argument singularly unpersuasive, however, given that the '994 Patent expressly references "conforming standards" and describes those standards in the same way as does the 1990 EIA/TIA standard.  The Court was not dissuaded by the fact that reference to the prevailing standard did not appear in the "Background"

---

[5]  Though not specifically characterized as such, this first invalidity argument technically is an "enforceability" argument, premised on alleged inequitable conduct by the Plaintiff.

section of the patent (as Doc's argued it should have), or that the patentee did not identify the standards by name.  The patent directly references "conforming standards" in a way which makes it clear that the patent's spacing requirements are designed to be consistent with those very standards.  In light of these references, the Court found that it was not *likely* that the PTO was deceived into believing that no such conforming standard existed, especially given that the standard in question was in the public domain.

Further, as Plaintiff pointed out, Doc's did not even attempt to prove an "intent to deceive" on Plaintiff's part, which is a necessary element of any inequitable conduct claim (or defense).  *Ferring B.V. v. Barr Laboratories*, *Inc.*, 437 F.3d 1181, 1202 (Fed. Cir. 2006).  Where, as here, the patent points the reader (including any reasonable examiner) to the *very* standards Doc's asserts are relevant, and Doc's proffered absolutely no evidence of fraudulent or improper intent on the part of Plaintiff, it is difficult to conclude that Doc's could prove an intent to deceive at trial, especially by clear and convincing evidence.  The Court found, therefore, that the Plaintiff had borne the burden of proving that Doc's *likely could not* sustain its inequitable conduct claim (defense) at trial so as to render the Plaintiff's patent invalid or unenforceable.

*Second*, Doc's argued that the '994 Patent is invalid under 35 U.S.C. § 102(b) because the patented product was "on sale" in the United States more than one year before the patent's filing date.  In this regard, Doc's argued only that unidentified "people in the industry" were pulling cable "taut" during installation – *i.e.*, that Doc's thought cable installers were generally practicing certain aspects of the method claim – more than one year prior to the filing date of the '994 Patent.  Doc's presented no evidence, however, that anyone actually practiced Claim 17's method by using a J-Hook more than one year prior to the filing date of the '994 Patent.  On the record presented, therefore, the

6

Court found that § 102(b) *likely* does not even apply.  Indeed, Doc's did not present a coherent argument to the contrary.  Doc's simply did not present evidence of an "on sale" bar event within the meaning of 35 U.S.C. § 102.  The Court, therefore, rejected that argument.

*Third*, Doc's argued that Claim 17 – the only claim at issue – is invalid under 35 U.S.C. § 103 because the combination of a prior art J-Hook with the methodology outlined in Claim 17 would have been "obvious," as defined in the statute, in light of everything that existed in the public domain before the patent's filing date.  Specifically, Doc's asserted that the combination of a foreign J-Hook reference (*i.e.*, the OBO Betterman brochure disclosing a "OBO Kabeltrag-Systeme KTS '94" hook) with the 1990 EIA/TIA spacing standards was obvious and that is all Claim 17 teaches.  As with the others, the Court found that Plaintiff had established that it is substantially likely that Plaintiff would prevail on this issue.

Before analyzing this argument, the Court explained that the relevant question is whether or not Doc's put forward sufficient evidence to at least raise the specter that the '994 Patent would be invalidated and thereby overcome any other finding the Court might make with respect to infringement by Doc's.  More specifically, keeping in mind that the Plaintiff bears the burden of proof in any request for a preliminary injunction, the question before the Court is whether the Plaintiff has established that it has a substantial likelihood of overcoming Doc's' charges of invalidity.  The Court further noted that a patent enjoys a presumption of validity at this, as well as every other stage, of the litigation.  *See*, *e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005); *Canon Computer Sys., Inc., v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

Of note, the instant patent's claims have already been examined twice by the PTO, and Claim

7

17 survived both examinations.  In that regard, the Betterman J-Hook (upon which Doc's relies), was brought to the PTO's attention during the second examination (*i.e.*, the first reexamination).  Further, the patent itself (in column 8, line 10) references "conforming standards" that existed at the time. The "conforming standards" identified in the patent are the very spacing requirements set forth in the 1990 EIA/TIA standard (ANSI / ERI/TIA-569-1990, "Commercial Building Standard for Telecommunications Pathways and Spaces"), upon which Doc's now relies. As outlined in the Court's prior order, therefore, it appears to the Court that the PTO had sufficient information before it – not once, but twice – from which it could analyze the very questions Doc's raised with respect to obviousness under 35 U.S.C. § 103.

The Court recognized that it is not bound by the findings of the PTO, and that it could determine that Claim 17 is "obvious" in light of the noted prior art references, or others, after a more careful examination of the method claim.  At this stage of the proceedings, and based upon the evidence presented (or not presented), however, the Court determined that it is *not likely* that Doc's would be able to prove that Claim 17 is invalid under § 103 because the PTO had sufficient information before it during its prior examinations to assess the very obviousness claim Doc's raised in support of invalidity.

Further, the Court considered many secondary considerations of nonobviousness and found that the Plaintiff had put forth *substantial* evidence on each, which collectively made it highly unlikely that Doc's would prevail on its, as yet untested, claims of invalidity.

The first secondary consideration the Court considered is the "long felt need in the art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).  Unrebutted testimony at the March 9, 2006 hearing established that, prior to the invention taught in the '994 Patent, there was

8

a long felt need in the industry for an improved method for hanging – or otherwise supporting – low voltage communication cable.  There was also testimony, again unrebutted, that those skilled in the art immediately accepted, in fact embraced, the patent's invention.  Based on this, the Court concluded that there was a long felt need in the art for Plaintiff's invention and a general acceptance of the invention in the industry.

The Court next considered evidence relating to "commercial success" as a secondary consideration.  *Id*.  Based on the evidence presented, there simply is no dispute that Plaintiff's J-Hooks, and the method of use described in Claim 17, are commercially successful.  As noted in the Court's earlier opinions, Plaintiff's percentage of the market for cable hooks or hangers since the introduction of the J-Hook is substantial, and has consistently remained so.  Indeed, the J-Hooks have been so well accepted that Plaintiff has retooled a significant portion of its manufacturing efforts so as to make these hooks their primary product line.

Finally, the Plaintiff put forth substantial evidence of blatant "copying," a compelling secondary consideration.  Indeed, Doc's openly admitted at the hearing that it engaged in <u>direct</u> copying of the Plaintiff's patented products, even to the point of having replicas made which bore Plaintiff's own trademarks.  *Id*.

With all of these considerations in mind, the Court determined that the Plaintiff had borne its burden of proving that it is unlikely that Doc's will prove at trial that Claim 17 is invalid under 35 U.S.C. § 103 by the combination of the OBO brochure and the 1990 EIA/TIA standard.  Accordingly, the Court found that it is *substantially likely* that the Plaintiff *will succeed* in resisting Doc's' claim that the '994 Patent is invalid or unenforceable.

### 2.    *Infringement Analysis*

9

The Court also noted that demonstrating a "likelihood of success on the merits" further requires a showing by Plaintiff that it is substantially likely that Doc's will be found to have infringed Claim 17 of the '994 Patent.  While this portion of the Court's prior analysis speaks to infringement and not validity, in the interest of completeness, the Court briefly includes it herein.

As outlined in *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000), an infringement analysis involves two steps.  The first step is to construe the claim in question to determine its scope and meaning.  *Id.*  The second step is to compare the construed claim with the accused device or process.  *Id.*  It is well-settled that the construction of the terms in a patent is an issue to be determined by the Court, as a matter of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 372 (1996).

In this case, the only general term in dispute is "low voltage communication cable," which appears in Claim 17.  While there was not much dispute over what "low voltage" means, there was significant dispute over the specific meaning of "communication cable."  Accordingly, the Court limited its construction to "communication cable" specifically.  For the reasons outlined in the Court's prior order, the Court construed "communication cable" to mean **"*any cable which carries any data or control signal from one point to another in a low voltage system – i.e., that communicates between aspects or elements of a low voltage system*.**"

Having construed the only relevant claim (and term), the Court considered whether it is *substantially likely* that Doc's has infringed the '994 Patent.  Because there is no claim of direct infringement here, the only question before the Court was whether the Defendant <u>indirectly has infringed</u> the patent by either (1) inducing infringement, or (2) engaging in contributory infringement *via* sale of a product that the Defendant understands is intended for use in an infringing manner.

10

Because the Court found that the Plaintiff is *substantially likely* to succeed on its contributory infringement claim, it did not address the claim that Doc's also "induced infringement" of the '994 Patent.

In support of its finding, the Court explained that the nature and placement of Doc's' own advertising materials demonstrates that Doc's' target J-Hook audience is the cabling industry. These materials also show that the J-Hooks Doc's sells are specially adapted and expressly sold for use in hanging communication cable(s). Further, Doc's failed to establish the existence of any substantial non-infringing use of its J-Hooks. As discussed in its earlier order, anecdotal (and hypothetical) claims by Doc's President Forrest Dockery that a contractor – or anyone, for that matter – might take one of the Defendant's J-Hooks home and use it to hold a fishing rod in the garage is *not* evidence of a substantial noninfringing use.

Additionally, the Court noted that post-litigation efforts to create a non-infringing market are insufficient to avoid infringement; and the notion that Doc's may adapt its allegedly infringing product at some point in the future to capture such a market (small as it might be) cannot justify the conclusion that there is a substantial noninfringing use for an otherwise infringing product. In this regard, the Court found Mr. Dockery's testimony that Doc's wishes to develop a "general purpose hook market" for its allegedly infringing J-Hook wholly unavailing.

The Court found, therefore, that it is *substantially likely* that the Plaintiff will succeed on the merits of its claim because: (1) Plaintiff has established that it is substantially likely to prevail on Doc's' claim that the patent is invalid; and (2) Plaintiff has established that it is substantially likely to prove by a preponderance of the evidence at trial that the Defendant is engaged, and has been engaged, in acts of contributory infringement.

11

### B.    The Applicable Legal Standard

With this background, the Court turns to the question of whether it applied the appropriate legal standard in this case when it applied the traditional four-part test for assessing requests for a preliminary injunction under Rule 65.

Even if it were true that the Federal Circuit in *Amazon* had held that a unique preliminary injunction standard (*i.e.*, different from that used in other cases under Rule 65) applies in patent cases where an invalidity defense has been asserted, the Supreme Court's recent decision in *Ebay v. MercExchange LLC*, certainly suggests that such a determination would be improper.  In *Ebay*, the Supreme Court held that traditional principles of equity generally applied in determining whether it is appropriate to issue a permanent injunction apply with equal force in patent cases.  As such, the Court instructed that the Federal Circuit cannot alter the traditional standard.  While *Ebay* involved a permanent injunction specifically, the Court did not limit its holding to that context; the Court's reasoning likely applies with even greater force at the preliminary injunction stage.  If *Amazon's* intent was to articulate a completely new preliminary injunction standard, therefore, *Ebay* presumably prohibits such an effort and would require a re-examination of that holding by the Federal Circuit.  The Court believes, however, that the defendant reads *Amazon* too broadly and takes too much from the "vulnerability" language used therein.

Rather, it appears that *Amazon* merely sought to clarify how courts should address certain considerations that arise in patent cases when preliminary injunctions are sought.  These issues arise from the interplay between claims of infringement (by a plaintiff) and invalidity (by a defendant), both of which touch upon a plaintiff's ability to demonstrate a "likelihood of success on the merits."

In addressing how these issues are to be assessed when a court considers a request for a

12

preliminary injunction, the *Amazon* Court made a few critical points – neither of which was particularly novel.  First, where a plaintiff requests a preliminary injunction, it is the plaintiff who bears the burden of proof with respect to all aspects of the traditional four-part test for the issuance of such an injunction.  And, second, where a defendant asserts an affirmative defense to a patent claim, the burden of proving likelihood of success on that claim remains with the plaintiff at the preliminary injunction stage – *i.e.*, to establish a "likelihood of success on the merits" of its claims a plaintiff must establish a substantial likelihood that it will prevail on <u>both</u> its own affirmative claims and on defendant's affirmative defenses.  239 F.3d at 1350.  These rules are not unique to patent cases; they apply in any case where a defendant has affirmative defenses available to it which are distinct from its mere denial of a plaintiff's claims.

The error the *Amazon* Court identified in the district court's analysis was the district court's insistence on addressing the affirmative defense of invalidity as it would at trial – *i.e.*, requiring the defendant to prove invalidity by clear and convincing evidence in order to defeat a request for a preliminary injunction.  Importantly, while the *Amazon* Court held that the district court should not have imposed the full trial-required burdens on the defendant at the preliminary injunction stage, it held expressly that the district court must keep those burdens in mind in undertaking its analysis under Rule 65.

As noted above, in support of its position here, Doc's seizes upon *Amazon's* statement that "[v]ulnerability [of the plaintiff's patent to an invalidity challenge] is the issue at the preliminary injunction stage, while validity is the issue at trial."  239 F.3d at 1359.  While vulnerability may be the issue, however, *Amazon* did not identify it <u>as</u> <u>the</u> <u>test</u>.  While the Federal Circuit, in *Amazon*, chastised the district court for applying too high an invalidity standard at the preliminary injunction

stage, its <u>clarification</u> of the distinction between the trial standard and the preliminary injunction standard <u>was not meant to redefine</u> the preliminary injunction standard. What the Federal Circuit said was that a district court need not *find* invalidity by clear an convincing evidence at the preliminary injunction stage in order to find that a preliminary injunction should not issue. 239 F.3d at 1358. Instead, <u>keeping in mind the burdens to be imposed on the respective parties at trial</u>, it said that a court must be satisfied that it is not substantially likely that a defendant will prevail at trial on its invalidity claim – *i.e.*, that the patentee has shown that an asserted invalidity defense lacks substantial merit.

To the extent the evidence demonstrates "vulnerability" in this manner, Doc's' argument may be appropriate. In so far as Doc's argues that the *Amazon* Court contemplated that "vulnerability" may be demonstrated by a lesser showing than that normally applied under Federal Rule 65 and the traditional preliminary injunction standard, however, Doc's misreads that case. *Amazon* did not announce a new, more relaxed, standard for patent cases. Rather, it clarified how existing law should have been applied in that case.

Post-*Amazon*, the bar and a number of district courts focused not on the test actually articulated by the Federal Circuit in that case, but on certain other language used by the Court – *i.e.*, (1) its use of the phrase "substantial question," when discussing a patentee's need to prove it is substantially likely to succeed on the merits of an invalidity claim, and (2) its use of the term "vulnerable" when discussing the level of evidence of invalidity necessary to defeat a request for preliminary injunction. Based on this language, a belief apparently has emerged that only the most minimal showing of invalidity is sufficient to withstand a patentee's request for a preliminary injunction. Thus, parties began to argue, with some success, that the mere assertion of an invalidity

claim is sufficient to suggest that a patent is "vulnerable" to such a finding and, thus, is sufficient to defeat a request for a preliminary injunction.[6]  Indeed, some commentators have gone so far as to suggest that the Federal Circuit's focus on vulnerability has not only redefined the preliminary injunction standard in patent cases, but has redefined the weighing or balancing process normally employed under Rule 65.  *See* Steven J. Lee, *Recent Trends in Patent Litigation Under the Hatch-Waxman Act*, 878 PLI/Pat 991 (Prac. Law Inst. Patents, Copyrights, Trademarks, & Literary Property Course Handbook Series 2006).

Though a review of post-*Amazon* Federal Circuit cases does not seem to support the belief that the Federal Circuit has, in practice, altered the Rule 65 standard for patent cases, its continued use of the unfortunate "vulnerability" language from *Amazon*, has fueled the belief that it has done so.[7]  And of course, as noted above, had the Federal Circuit intended to create a new Rule 65 standard for patent cases, *Ebay* would seem to require that it now reverse course.

---

[6] Indeed, at a recent program held during the 2006 Annual Meeting of the Federal Circuit Bar Association, a panel of experienced professionals and judges discussed the practical impact of the Federal Circuit's jurisprudence on a party's ability to obtain preliminary injunctive relief, even in cases involving clear acts of infringement.  The consensus among practitioners and judges alike was that it is futile to *ever* seek a preliminary injunction because the mere assertion of a claim of invalidity by a defendant would render the patent sufficiently "vulnerable" to prohibit entry of such an injunction.  Essentially, the consensus seemed to be that the relief normally available under Rule 65 where its standards are otherwise satisfied, simply is not a tool available to patent holders after *Amazon* and its progeny.  For the reasons discussed in this order, the Court cannot believe that is the result the Federal Circuit intended in *Amazon*.

[7]  An admittedly non-exhaustive analysis of post-*Amazon* and *Ebay* Federal Circuit cases indicates that, despite the language chosen, the Federal Circuit affirmed denials of preliminary injunctions or reversed grants thereof based on the assertion of an invalidity defense only when the evidence of invalidity has been strong – *i.e.*, where a strong argument can be made that the patent holder was not substantially likely to prevail on the asserted invalidity claim.

*Abbott Laboratories v. Andrx Pharm., Inc.*, 452 F.3d 1331 (Fed. Cir. 2006)*, was the Federal Circuit's first post -*Ebay* case to address this issue. Like *Amazon*, *Abbott Labs* attempted to clarify, though to the dissent's dissatisfaction, when the assertion of an invalidity defense (or claim) will defeat a request for a preliminary injunction. In doing so, the majority stated "if [the defendant] raises a substantial question concerning . . . validity, *i.e.*, . . . [an] invalidity defense that the patentee cannot prove lacks substantial merit, then the patentee has not established a likelihood of success of the merits." *Id*. at 1335 (alteration in original) (citations and internal quotations omitted). It also seemed to say that the issue for the district court was whether a "substantial argument" regarding invalidity could be made at trial. *Id.* In her dissent, Judge Pauline Newman expressed concern with the majority's use of the terms "substantial question" and "substantial argument" and argued that their use fundamentally alters the analysis of whether a defendant likely will prevail at trial on a claim that the patent is invalid. In that regard, Judge Newman argued that the majority failed to consider the burdens of proof that will inhere at trial, thereby actually changing the preliminary injunction standard. Judge Newman also took the majority to task for ending its analysis with its "vulnerability determination" – *i.e.*, for not weighing <u>all</u> <u>four</u> of the factors a court must consider under Rule 65 to determine whether and when a preliminary injunction should issue. Ultimately, Judge Newman concluded that the majority opinion in *Abbott Labs* was in direct conflict with *Ebay.*

To the extent Judge Newman's criticisms of the *Abbott Labs* majority opinion are correct – *i.e.*, that it *has* diluted the preliminary injunction standard in patent cases, Doc's would be correct and, despite *Ebay*, this Court would be required to do so as well. There are two things that prevent this Court from agreeing with Judge Newman that the majority completely changed the test (or affirmed a prior change of the test) – for preliminary injunctions in patent cases. First, is the fact the majority

16

in *Abbott Labs* expressly claims to have taken the holding of *Ebay*, into account. Indeed, the majority cites to *Ebay* and asserts its intention to abide by the Supreme Court's directive that the "familiar [Rule 65] principles apply with equal force to disputes arising under the Patent Act. . . ." 452 F.3d at 1334. Thus, despite the continuing use of confusing language which the Federal Circuit one day hopefully will clarify, the *Abbott Labs* majority claims to have applied Rule 65 in that case in traditional fashion.[8]

The second thing that prevents this Court from concluding that the Federal Circuit would agree with Doc's' reading of its jurisprudence is the Federal Circuit's recent decision in *Sanofi-Synthelabo v. Apotex, Inc.*, --- F.3d ----, No. 06-1613, 2006 WL 3613616 (Fed. Cir. Dec. 8, 2006). There, the Federal Circuit affirmed the grant of a preliminary injunction prohibiting the alleged infringement of a patent, despite the assertion of a number of invalidity challenges to that patent.

In doing so, though it did not cite *Ebay* or discuss the debate between the majority and minority in *Abbott Labs*, the Court considered and weighed all four aspects of the four-factor test traditionally employed under Rule 65. When considering the question of the patentee's likelihood of success on the merits, moreover, it tellingly avoided any discussion of whether the patent was "vulnerable" to the alleged infringer's anticipation and obviousness defenses. Instead, it considered

_____

[8] Perhaps the primary reason confusion exists is because the Federal Circuit's decisions after *Amazon* seem to assess the invalidity inquiry from the defendant's perspective, rather than the plaintiff's. Traditionally, the preliminary injunction standard is applied from the plaintiff's perspective. Thus, where a court finds that an affirmative defense has identifiable merit, that determination helps inform the court's decision as to whether *the plaintiff* "likely will succeed on the merits" of his claim. In other words, while the traditional standard incorporates the very considerations regarding invalidity that are at the center of this debate, it does so from a different perspective. It is when the focus shifts from the showing a plaintiff must make to that required of a defendant, that words like "vulnerability" and "substantial argument" creep in and confuse the issue.

17

and weighed the evidence presented by both sides on those defenses and found no error in the district court's conclusions that the patentee had demonstrated sufficiently that, given the burdens of proof that would inhere at trial, the defenses lacked "substantial merit." Thus, the Federal Circuit did not appear to endorse a preliminary injunction standard that gives undue weight to the mere assertion of an invalidity defense. Indeed it examined those defenses carefully to determine whether it was likely the patent holder could withstand those defenses at trial, ultimately concluding that it was.[9]

For all of these reasons, the Court concludes that Doc's misreads *Amazon* and that the Court was correct to apply the Rule 65 four-factor test in the traditional manner in this case. The Court concludes that, when Rule 65 is properly applied, the question a district court must ask where an affirmative defense of invalidity is asserted in response to a request for a preliminary injunction, is whether, in light of the burdens that will inhere at trial on the merits, the plaintiff has shown that it will likely withstand those defenses. *See Sanofi-Synthelabo,* 2006 WL 3613616, at *3. If the answer is "yes" (and assuming there is also a likelihood of success in proving infringement and establishing the remaining factors), then a preliminary injunction is appropriate because the court necessarily will have weighed the invalidity defense and determined whether it had sufficient merit to upset the plaintiff's ability to demonstrate a "likelihood of success on the merits."

As it did in its original orders, the Court finds that the Plaintiff has satisfied this inquiry and that the Plaintiff likely will be able to withstand Doc's' invalidity claim at trial. In the event the Federal Circuit concludes it *has* changed the preliminary injunction standard, however, the Court still

---

[9] Though Judge Newman was not on the *Sanofi-Synthelabo* panel, the panel seemed to follow the test endorsed in her *Abbott Labs* dissent. Because it did so without criticizing or overruling the majority opinion in *Abbott Labs*, however, this Court must assume that the latter panel felt that the two *Abbott Labs* opinions could be harmonized. That is a conclusion this Court reaches as well.

18

finds that Doc's has not raised a "substantial question" as to the '994 Patent's validity.  Thus, for the reasons described in this and its earlier orders, the Court concludes that even the most expansive reading of *Amazon* and *Abbot Labs* would not upset the Court's issuance of a preliminary injunction in this case.

The Court now turns to the second prong of Doc's' motion for reconsideration.

### C.    New Evidence

As noted by Doc's, *Mathews v. Alltop* highlights three situations that can justify a Court reconsidering one of its orders:

(1)    an intervening change in controlling law;

(2)    ***the availability of new evidence***; and

(3)    the need to correct clear error or to prevent manifest injustice."

*Mathews*, 1994 U.S. Dist. LEXIS 5521, at *2 (emphasis added).  The second prong of Doc's' motion relies, in turn, on the second prong of this test.  Thus, the Court must determine whether the PTO's recent grant of Doc's' patent reexamination request constitutes new evidence that counsels a change in the Court's ruling.  For the reasons that follow, the Court finds that the PTO's decision does not affect the Court's analysis in connection with its issuance of the preliminary injunction in this case.

The Court does not agree that the language in the PTO's order granting reexamination clearly articulates the PTO's views *vis-a-vis* the EIA/TIA standard and the validity of the '994 patent, as Doc's argues.  All that is clear is that the PTO examined and reexamined the Plaintiff's patent in the past and, having been requested by Doc's to reexamine it again, has agreed to do so.  It is generally the case (as is evidenced by the history of the present patent), that the PTO readily grants

reexamination requests.[10]  Substantive conclusions, however, cannot be drawn from the PTO's mere willingness to perform a reexamination.  Similarly, as with most reexaminations (including the first one of the present patent), the PTO has elected to reexamine the *entire patent,* even though Doc's only requested reexamination of certain claims.  Hence, there is no indication that the PTO has narrowed its focus to the claim at issue in this case or has reached any specific opinions as to that claim.  Given these realities, the Court does not find that the PTO's decision to conduct a reexamination either indicates a view by the PTO that the '994 patent is likely invalid, or constitutes sufficient "new evidence" to require a reversal of this Court's earlier order.

The PTO's order is not a merits determination, nor does it suggest what the outcome of its ultimate merits determination will be.  The PTO's order simply indicates that a substantial new question of patentability has been raised by the request for *ex parte* reexamination – *i.e.*, the question has been raised by the filing party.  Certainly, the reexamination might ultimately yield "new evidence" that would be relevant to the Court's order(s).  The mere existence of a reexamination proceeding prompted by an admitted infringer, however, does not constitute such compelling evidence that the Court is left with no choice but to ignore the evidence already before it.

As outlined by the Court in its Preliminary Injunction Order (Doc. 27), numerous secondary indicia of non-obviousness support Plaintiff's contention that it likely will resist Doc's' invalidity challenges.  Likewise, the relevant claim of the patent has survived two examinations already; had the PTO felt that the claim was patently invalid, it has had two opportunities to say so.  In light of: (1) these considerations; (2) the Court's view that the PTO's decision to grant a second reexamination

---

[10] While the parties argue the point ant the fringes, it appears that plaintiffs' claim that the PTO grants in excess of 90% of the reexamination requests it receives is accurate.

20

does not constitute substantive new evidence of invalidity; and (3) the Court's application of all other factors relevant to its determination under Federal Rule 65 (as explained in its earlier order), the Court declines to reconsider its order preliminary enjoining Doc's from continuing to infringe the '994 patent by making, offering, or distributing the J-Hooks at issue in this proceeding.

## II.    CONCLUSION

For the foregoing reasons, as well as those articulated on the record at the June 8, 2006 hearing and the Court's prior written orders, Doc's Marketing, Inc.'s motion for reconsideration (Doc. 29) is **DENIED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: January 9 , 2007**

21